IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
| --- | --- |
| BONNY BERKNER | : |
|  | : |
| v. | :   Civil Action No. DKC 12-1390 |
|  | : |
| REBECCA M. BLANK, ACTING | |
| SECRETARY OF COMMERCE | : |

**MEMORANDUM OPINION**

Presently pending and ready for review in this employment discrimination case is the motion to dismiss or for summary judgment filed by Defendant Rebecca M. Blank in her official capacity as Acting Secretary of the United States Department of Commerce.[1]  (ECF No. 21).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6.  For the following reasons, the motion, which will be construed as one for summary judgment, will be granted.

**I.   Background[2]**

Plaintiff Bonny Berkner worked as a Geographer for the U.S. Census Bureau in the Department of Commerce ("Commerce"). Plaintiff suffers from Post-Traumatic Stress Disorder, anxiety

---

[1] Pursuant to Fed.R.Civ.P. 25(d), Rebecca M. Blank, the current Acting Secretary of Commerce, has been substituted for former Secretary Gary Locke.

[2] Unless otherwise noted, the facts outlined here are either undisputed or are construed in the light most favorable to Plaintiff.

disorder, and stress related to bereavement. Her supervisors were Michael Ratcliffe and Timothy Trainor. Ms. Berkner made a number of complaints to Mr. Ratcliffe and Mr. Trainor during the course of her employment for incidents that she asserts are related to her mental disability.

In late 2007, Ms. Berkner complained that drinks she left on her desk had been tampered with, and that she became ill as a result. (ECF No. 28-5, at 1). In late 2007 and early 2008, Ms. Berkner reported that her desk and cabinets had been tampered with and personal items, including cash and copies of her keys, were taken. (*Id.*). Ms. Berkner alleged that a man shot a gun at her car from the back of a truck while she was driving. (ECF No. 28-5 at 1). Plaintiff thought that this man was either a coworker or friend of a coworker — "a computer savvy Latino man . . . by the name of Omar." (ECF No. 21-4, at 2). In October 2008, she filed a number of "Security Incident Reports" related to these events. (ECF No. 21-7). Plaintiff repeatedly inquired about these incidents with a number of her coworkers, including an unwelcome call to one coworker's home. (ECF No. 21-4, at 1). Plaintiff had numerous conversations with coworkers in which she was agitated, demanded information related to her complaints, and accused coworkers of engaging in a conspiracy with management. Plaintiff also left confusing notes for coworkers related to her complaints. Ultimately, Plaintiff's coworkers

complained that they felt disrupted and threatened by the nature and frequency of Plaintiff's questioning.  (ECF No. 28-9, at 1).

In August 2008, Mr. Ratcliffe and Mr. Trainor had a meeting with Plaintiff and counseled her to keep her conversations focused on work-related issues.  (ECF No. 28-6).  Because Mr. Ratcliffe did not see Plaintiff's behavior as improving, he proposed suspending her for fourteen days for inappropriate conduct and failure to follow supervisory directives.  (ECF No. 21-4).  The memorandum issued by Mr. Ratcliffe in December 2008 in connection with this suspension outlined a number of additional instances in which Plaintiff's conduct made her coworkers feel uncomfortable or threatened, including one conversation in which Plaintiff raised her voice at an employee and told the employee that if she did not receive help, something "really bad" was going to happen that they all would regret.  (ECF No. 21-4).  He also offered to have her undergo a psychiatric medical examination in connection with her supervisors' investigation of her behavior.  (ECF No. 28-9).

Mr. Trainor upheld Mr. Ratcliffe's recommendation and suspended her for interfering with the work of other employees, making other employees feel threatened, and disrupting the workplace.  (ECF No. 28-4).  The day after she was suspended, Plaintiff's sister contacted Plaintiff's union representatives to let them know that Plaintiff had asked her if she could

borrow a gun. (ECF No. 21-8). As a precaution against Plaintiff's "unpredictable behavior," the human resources department required Plaintiff to enter the building through a metal detector after she returned to work from the suspension. (ECF No. 28-12).

In April 2009, Plaintiff met with a union representative, Frank Silberstein. With Mr. Silberstein's help, she formally requested that Commerce provide her with a reasonable accommodation by relocating her out of the Geography Division. Commerce denied this request because she did not provide the required medical documentation to support her request. Mr. Silberstein reported in a memorandum to the human resources department that, during their meeting, Plaintiff:

> Became very emotional and quite disturbed at how the agency was able to build a very strong case against her, and described to me that she was facing overwhelming odds . . . She then insisted and very clearly expressed that if she gets fired, that she will take her own life. Her words were, "If I get fired, I'll kill myself." I was upset and told her, "Bonny, please don't do that." . . . She then went on explaining that when she kills herself she will return and haunt people, perhaps even being born again and getting even that way . . . She continued saying that in addition to taking her own life, she might take others with her. She must have sensed that I was disturbed about that statement, because she paused and said, "Not here, I know where they live" . . . I asked her to recant that statement. She then noted, "Now I'll get in trouble for what I said." She then said, "I recant it,

> but I will do what I do.  I'll do what I
> do."

(ECF No. 21-13).  Plaintiff does not challenge that Mr. Silberstein reported this to Plaintiff's superiors, but disputes actually saying any of this to him.  Rather, in her deposition testimony, she asserted that she was "venting" and "not sure what words came out of [her] mouth."  (ECF No. 28-14, at 12). As a result of Mr. Silberstein's report, Mr. Ratcliffe placed Plaintiff on administrative leave and recommended that her employment be terminated.  (ECF No. 21-14).  On June 17, 2009, Mr. Trainor accepted the recommendation and terminated Plaintiff because her statements to Mr. Silberstein demonstrated continued misconduct, and the nature of the comments constituted a threat to employees.  (ECF No. 21-14).

### A.   Procedural Background

Plaintiff appealed her termination and complaints of discrimination to the Merit Systems Protection Board ("MSPB"). On March 19, 2010, an administrative judge upheld Commerce's decision to terminate Plaintiff.  She appealed this decision to the full board of the MSPB, which affirmed the decision. Plaintiff then appealed this decision to the Equal Employment Opportunity Commission ("EEOC").  The EEOC upheld the MSPB's decision.  On July 27, 2011, Plaintiff filed a complaint alleging disability discrimination in the U.S. District Court

for the District of Columbia.  (ECF No. 1).  On November 18, she filed an amended complaint.  (ECF No. 3).  On April 19, 2012, Defendant's motion to transfer based on venue was granted, and the case was transferred to this court.  (ECF Nos. 15, 16).  On August 13, 2012, Defendant filed a motion to dismiss or, in the alternative, for summary judgment.  (ECF No. 21), which Plaintiff opposed (ECF No. 28).  Defendant replied on January 30, 2013.  (ECF No. 34).

## II.  Standard of Review

Defendant's motion is styled as a motion to dismiss or for summary judgment.  Because the parties submit and rely on materials outside the pleadings, the summary judgment standard applies.

Summary judgment may be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of

[his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). At the same time, the facts that are presented must be construed in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## III. Analysis

Plaintiff's amended complaint asserts seven claims against Defendant: (1) harassment based on actual or perceived disability in violation of the Rehabilitation Act of 1973;[3] (2) failure to accommodate Plaintiff's disability in violation of the Rehabilitation Act; (3) retaliatory harassment in violation

---

[3] Plaintiff also brings her Rehabilitation Act claims under the Americans with Disabilities Act ("ADA"), which expressly excludes the United States or "a corporation wholly owned by the government of the United States" from its ambit. 42 U.S.C. § 12111(5)(B). The Rehabilitation Act, however, may be applied to the Department of Commerce, and it incorporates the ADA's standards in determining whether an employer discriminated against an employee. 29 U.S.C. § 791(g).

of Title VII of the Civil Rights Act of 1964; (4) retaliatory discharge in violation of Title VII; (5) discriminatory discharge in violation of the Rehabilitation Act; (6) discriminatory treatment and discharge in violation of the Rehabilitation Act; and (7) a claim seeking judicial review of the MSPB decision.

### A.   Rehabilitation Act Claims

### 1.   Counts V and VI:  Improper Discharge Based on Actual or Perceived Disability

The Rehabilitation Act prohibits Commerce and other federal entities from discriminating against an "otherwise qualified individual with a disability . . . solely by reason of her or his disability." 29 U.S.C. § 794(a). Because the Rehabilitation Act incorporates the ADA's standards for determining liability, ADA cases may serve as precedent for claims under the Rehabilitation Act. To establish a *prima facie* case under the Rehabilitation Act, Plaintiff must show that she: (1) was disabled or perceived as being disabled by her employer; (2) was "otherwise qualified" to perform the work; and (3) was discriminated against due to her disability. *Davis v. Univ. of N.C.*, 263 F.3d 95, 99 (4th Cir. 2001).[4]

---

[4] Under the prior version of the ADA, "disability" was defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of [the] individual; (B) a record of such an impairment; or (C) being

Under the familiar *McDonnell Douglas* three-step framework, once a plaintiff establishes a *prima facie* disparate treatment case, the burden then shifts to the employer to provide some legitimate, non-discriminatory reason for the disputed action. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).  If the employer can do so, the burden shifts back to the employee, who must demonstrate that the reason offered is, in fact, a pretext for discrimination.  *Id.*  In the end, "[t]he plaintiff always bears the ultimate burden of

_____

regarded as having such an impairment." 42 U.S.C. § 12102(1). Congress amended the standard for determining whether a person is disabled under the ADA (and derivatively under the Rehabilitation Act) in the ADA Amendments Act of 2008, Pub.L. No. 110-325.  The amendments did not become effective until January 1, 2009.  *Id.* § 8.  The amended version of the ADA provides:

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3)(A).

To establish the first element, therefore, Plaintiff need only establish that her "employer regarded [her] as being impaired, not that the employer believed the impairment prevented the plaintiff from performing a major life activity." *Wolfe v. Postmaster Gen.*, 488 Fed.App'x 465, 468 (11th Cir. 2012) (applying amended version of ADA, which applies to incidents occurring after January 1, 2009).

proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

Defendant challenges Plaintiff's ability to make out the first element of her *prima facie* case, that is, that Commerce perceived her as being disabled. Plaintiff offers evidence, however, that her employer perceived her as being disabled. Among other things, she submits an email from Mr. Ratcliffe to one of Plaintiff's coworkers in which he suggests that Commerce is mulling whether to ask the police to "have her temporarily committed." (ECF No. 28-17). Defendant does not challenge that Plaintiff meets the second element — that she was otherwise qualified to do her work. Finally, this email presents evidence that she was discharged because Defendant perceived her as disabled. When viewed in conjunction with the fact that Mr. Ratcliffe was one of the supervisors who made the recommendation and final decision to terminate Plaintiff's employment, this email sufficiently raises an inference of illegal discrimination.

Assuming that Plaintiff makes out a *prima facie* "perceived as" disability discrimination claim, Commerce asserts that Plaintiff was fired because her conduct in voicing threats to Mr. Silberstein was another episode in a pattern of inappropriate behavior. Defendant therefore contends that

Commerce's actions were not discriminatory, because she was
fired for misconduct. Defendant thus argues that Plaintiff
cannot establish that its actions were pretext for
discrimination. Plaintiff avers that she never specifically
threatened suicide or violence on any of her coworkers in her
conversation with Mr. Silberstein, and Commerce's proffered
justification of her dismissal on the basis of this conversation
is therefore false and pretext for discrimination.

The Rehabilitation Act is not violated if an employee is
discharged because of her misconduct, "even if the misconduct is
related to a disability." *Jones v. Am. Postal Workers Union*,
192 F.3d 417, 429 (4th Cir. 1999). Further, "it makes no
difference if the employee was in fact guilty of misconduct."
*Pence v. Tenneco Auto Operating Co., Inc.*, 169 Fed.App'x 808,
811 (4th Cir. 2006). Rather, if the employer "honestly
believe[s] that the employee [] engaged in misconduct, then the
employer has not discriminated on the basis of disability." *Id.*

Plaintiff's assertions of pretext are insufficient
regarding Commerce's reasons for discharging her. Plaintiff
merely alleges that Mr. Silberstein mischaracterized her words,
but does not contest that he wrote the memorandum describing her
conduct. Nor does her recanting of her words overcome the
pattern of misconduct that Defendant proffers is the basis for
her dismissal. Accordingly, as to Plaintiff's discriminatory

11

discharge claims, summary judgment in Defendant's favor is appropriate on Counts V and VI.

### 2.   Count I:  Hostile Work Environment

To succeed on a claim for hostile work environment under the Rehabilitation Act, a plaintiff must prove:  "(1) she is a qualified individual with a disability; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis for imputing liability to the employer."  *Fox v. GMC*, 247 F.3d 169, 177 (4th Cir. 2001) (listing requirements for hostile work environment claim under ADA).  The "standard for proving an abusive work environment is intended to be a very high one because the standard is designed to filter out complaints attacking 'the ordinary tribulations of the workplace.'"  *Wang v. Metro. Life Ins. Co.*, 334 F.Supp.2d 853, 864 (D.Md. 2004) (citing *Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004)).  The plaintiff must show not only that she subjectively believed her workplace environment was hostile, but also that a reasonable person could perceive it to be objectively hostile.  *Fox*, 247 F.3d at 178.  To determine whether a reasonable person would perceive workplace harassment to be severe and pervasive, the court considers a number of factors, such as "the frequency of the discriminatory conduct;

12

its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 178. The conduct at issue must be far more severe than that of "a merely unpleasant working environment," *Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir.), *cert. denied*, 519 U.S. 818 (1996), and "must be sufficiently pervasive so as to become diffuse throughout every part of the work environment in which plaintiff functioned." *Romeo v. APS Healthcare Bethesda, Inc.*, 876 F.Supp.2d 577, 593 (D.Md. 2012) (citations omitted).

Plaintiff offers that her claim is supported by the following facts:  she was the only employee who was forced by her supervisors to use a metal detector in March 2009; between summer 2008 and January 2009, multiple coworkers told her that she was "mentally sick; her belongings were tampered with by coworkers in fall 2007 and summer 2008; her supervisor yelled at her in August 2008; she was suspended for fourteen days and placed on administrative leave in spring 2009; and her supervisors offered for her to undergo a psychiatric evaluation in December 2008.

Defendant argues that Plaintiff's supervisors' actions toward her were reasonable and do not constitute harassment. Further, Defendant argues that Plaintiff's allegations of abuse

from her coworkers are not sufficiently severe to support a hostile work environment claim.

The conduct of Plaintiff's supervisors was reasonable and does not amount to "unwelcome harassment" for purposes of the Rehabilitation Act. After receiving notification from Plaintiff's sister that she was seeking to find a gun, Defendant required Plaintiff to enter the building through a metal detector. This does not constitute harassment because it is reasonably calculated to address the threat that Defendant believed Plaintiff posed to her coworkers. Additionally, Defendant's placing Plaintiff on suspension and administrative leave were reasonable forms of discipline that allowed Defendant to assess the danger that Plaintiff posed to the office. *See Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (concluding that reasonable actions, including confining employee to her office and placing employee on administrative leave, taken by employer in response to concerns raised by employee's malfeasance and threat to the agency's wellbeing do not constitute harassment); *Parker v. State of La. Dep't of Educ. Special Sch. Dist.*, 323 Fed.App'x 321, 325 (5th Cir. 2009) (affirming summary judgment in favor of defendant on hostile work environment claim where plaintiff was placed on administrative leave for posing security threat to workplace). Additionally, the fact that Plaintiff's supervisors raised their

voices at her does not constitute a hostile work environment. The evidence Plaintiff offers does not show that the remarks were "so severe or pervasive as to render the workplace objectively hostile or ablusive." *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 776, 773 (4th Cir. 1997); *see also Jones v. Norton*, No. 03-1392, 2004 WL 3321483, at *5 (E.D.Va. July 22, 2004) (granting summary judgment in favor of defendant on hostile work environment claim where supervisor occasionally yelled and screamed at plaintiff). Finally, requesting Plaintiff to undergo a psychiatric evaluation after Defendant perceived her to be a threat to the workplace does not constitute "unwelcome harassment" under the Rehabilitation Act. The Act "does not prevent an employer from psychologically evaluating an employee who has been alleged to have made death threats against other employees." *Pence*, 169 Fed.App'x at 812. Consequently, drawing all inferences in favor of Plaintiff and accepting her statements as true, the conduct of her supervisors cannot be said to be so "objectively and subjectively offensive . . . that a reasonable person would find hostile or abusive." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

Likewise, the conduct of Plaintiff's coworkers, even if her version of events is credited, is relatively isolated and not severe. Plaintiff offers that on four occasions over the course of a year, her coworkers told her that she was either "mentally

ill" or "mentally sick," and that on four separate occasions during the same year, her personal items were tampered with. (ECF No. 28-5). Plaintiff offers no evidence that the incidents of theft or tampering were motivated by hostility toward her disability.   While these incidents are all unpleasant and distasteful, they do not rise to the level of severity that "change[] the terms and conditions of employment." *Faragher*, 524 U.S. at 788; *Avarado v. Donahoe*, 687 F.3d 453, 462 (1st Cir. 2012) (concluding that defendant calling plaintiff "crazy" on three separate occasions over the course of eight months "simply does not rise to the level of pervasiveness or gravity which we have, in the past, considered indicative of a hostile or abusive work environment.") (citations omitted); *Jackson v. Int'l Bhd. Of Teamsters, Local Union 705*, 125 Fed.App'x 729, 731 (7th Cir. 2005) (affirming grant of summary judgment where, among other things, all of plaintiff's belongings were moved into the hallway, cash was stolen from desk drawer and several other personal items taken, and plaintiff's "ethnic speech patterns" were mimicked, does not support hostile work environment claim); *Mannie v. Potter*, 394 F.3d 977, 982-83 (7th Cir. 2005) (affirming grant of summary judgment against mentally ill plaintiff on hostile work environment claim under the Rehabilitation Act where plaintiff's coworkers and supervisors made multiple derogatory statements about her mental stability); *Duncan v.*

16

*Manager, Dept. of Safety, City of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005) (concluding that incident of theft, without any evidence that it was motivated by hostility toward plaintiff's gender, does not give rise to gender-motivated hostile work environment); *Coulson v. The Goodyear Tire & Rubber Co.*, 31 Fed.App'x 851, 858 (6th Cir. 2002) (affirming grant of summary judgment and concluding that being called "looney toon, wacko, crazy, and Rambo" is not sufficient to create a hostile work environment) (internal quotations omitted).

Therefore, Plaintiff has not satisfied her burden of establishing that she was subject to a hostile work environment because of her alleged disability. *Hopkins*, 77 F.3d at 753 (working environment must be "hostile or deeply repugnant," not "merely unpleasant," to be actionable). Plaintiff's supervisors' actions were reasonably related to discipline and to address the threats they perceived Plaintiff to be to the workplace. Furthermore, the isolation of Plaintiff's harassment at the hands of her coworkers over time, combined with the lack of evidence to support that the incidents of theft and tampering were motivated by animus toward Plaintiff's disability, make summary judgment appropriate as to Plaintiff's hostile work environment harassment claim in Count I.

### 3.   Count II:  Failure to Accommodate

Count II of Plaintiff's complaint asserts that Commerce failed to accommodate Plaintiff's disability, in violation of the Rehabilitation Act.  Defendant argues that Plaintiff did not fully engage the interactive process by failing to provide required medical information.

The EEOC Regulations accompanying the ADA and applicable to the Rehabilitation Act require an agency to "make reasonable accommodation to the known physical or mental limitations of an applicant or employee who is a qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operations of its business."  29 C.F.R. § 1630.9(a).  The Regulations also require Commerce to:

> determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3).

"Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the

18

interactive process." *Beck v. Univ. of Wi. Bd. of Regents*, 75 F.3d 1130, 1136 (7th Cir. 1996).  Plaintiff provides no evidence outside of the allegations of the complaint to support her claim that she "provided the Agency with information pertaining to her psychiatric diagnoses."  (ECF No. 28 at 22).  After Plaintiff made her initial request for an accommodation, Commerce requested documentation regarding her medical diagnosis and needs.  (ECF No. 21-11).  Defendant offers evidence that, in response, Plaintiff's social worker submitted a form that addressed some, but not all of its questions.  (ECF No. 21-12).  Thus, it asked Plaintiff for additional information regarding her diagnosis and possible accommodations.  (ECF No. 21-18).  Plaintiff never responded.  "Because [Plaintiff] failed to hold up her end of the interactive process by clarifying the extent of her medical restrictions, [Defendant] cannot be held liable for failing to provide reasonable accommodations." *Steffes v. Stephan Co.*, 144 F.3d 1070, 1073 (7th Cir. 1998) (citing *Beck*, 75 F.3d at 1137); *see also Lewis v. Md. Sheriff's Youth Ranch*, No. 11-2494, 2012 WL 3012634, at *11 (D.Md. July 20, 2012) (concluding that a "defendant cannot be held liable for failing to provide a reasonable accommodation" where plaintiff failed to cooperate in the interactive process) (collecting cases) (internal quotations and citations omitted).  Accordingly,

summary judgment in favor of Defendant is appropriate on Count II.

**B.   Counts III and IV:   Title VII Retaliation Claims**

Plaintiff brings two claims of retaliation under Title VII: one for retaliatory discharge and one for retaliatory hostile work environment.   Plaintiff alleges that she was harassed and discharged because she engaged in the following protected activity: she complained of discriminatory harassment to supervisors in 2007, met with an EEO officer in 2008, and requested a reasonable accommodation in 2009.   Title VII makes it unlawful for "an employer to discriminate against any of [its] employees . . . because [s]he has opposed any practice made an unlawful practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."   42 U.S.C. § 2000e-3(a).

Plaintiff's retaliation claims fail as a matter of law because Title VII does not protect an employee from retaliation where the protected activity involves an alleged disability. *See Rahmaan v. Wal-Mart Stores, Inc.*, 2010 WL 890057, at *4 (D.S.C. March 8, 2010) (noting that "disability" is not a protected class under Title VII and dismissing a Title VII retaliation claim based on an alleged disability).   Rather, the Rehabilitation Act is the exclusive means by which a plaintiff

20

may raise claims against federal agencies relating to disability discrimination.   *Brown v. Henderson*, 6 Fed.App'x 155, 156 (4th Cir. 2001).

Even if Plaintiff's retaliation claims are construed to have been brought under the Rehabilitation Act, they would still fail, because Plaintiff has not established that Commerce's actions were motivated by retaliatory animus.

Although the Rehabilitation Act does not have a specific retaliation provision, it incorporates the remedies applicable under the ADA including 42 U.S.C. § 12203(a) which makes it unlawful to retaliate against individuals for making a charge, testifying, assisting, or participating in an investigation, proceeding or hearing regarding charges of disability discrimination.   29 U.S.C. § 794a; *see also Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001), *cert. denied*, 535 U.S. 933 (2002).   A plaintiff can prevail on a retaliation claim either by offering sufficient direct and indirect evidence or under a burden shifting method.   *Id.*   For proof with direct evidence, "[w]hat is required is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."   *Id.* at 391-92 (quoting *Brinkly v. Harbour Recreation Club*, 180 F.3d 598, 606-07 (4th Cir. 1999)).   Under the burden shifting method, a plaintiff must first establish a prima facie case by showing

that (1) she engaged in a protected activity; (2) her employer acted adversely against her; and (3) her protected activity was causally connected to her employer's adverse action. *Id.* at 392 (citing *Haulbrook v. Michelin North America, Inc.*, 252 F.3d 696, 705-07 (4th Cir. 2001); *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997)).  An action is materially adverse if, from an objective point of view, "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (quotation marks omitted).

Plaintiff asserts two adverse actions:  her discharge and her fourteen day suspension.  Assuming that a *prima facie* case is established, Defendant offers that both incidents stem from Plaintiff's pattern of inappropriate conduct, not retaliatory animus.  Plaintiff counters that Defendant's explanation for her suspension was pretextual because Mr. Ratcliffe, in deposition testimony, did not clarify how her actions had been inappropriate.  With respect to her discharge, Plaintiff counters that Defendant's explanation is false because her comments to Mr. Silberstein did not contain threats; that Defendant's justification for her firing shifted from being characterized first as "inappropriate conduct" and then as "threats"; and that pretext is evident because her superiors did

not feel threatened by Plaintiff's alleged statements. (ECF No. 28, at 26-28).

Plaintiff has failed to rebut the legitimate, non-discriminatory reasons for Defendant's actions. "[T]he plaintiff can prove pretext by showing that the explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of retaliation." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) (quotation marks and brackets omitted). Defendant suspended and later fired Plaintiff because it honestly believed that she was unable to behave appropriately. She was not fired because of one threat, but because that conversation was one link in a long chain of inappropriate conduct. Even if Plaintiff had not uttered the threat to Mr. Silberstein as he later reported it, that would not make her firing pretextual. *See Price*, 380 F.3d at 209 ("[M]ere mistakes of fact are not evidence of unlawful discrimination. Pretext is a lie, not merely a mistake." (citations and quotation marks omitted)); *see also Johnson v. AT & T Corp.*, 422 F.3d 756, 762 (8th Cir. 2005) ("[T]he proper inquiry is not whether AT & T was factually correct in determining that Johnson had made the bomb threats. Rather, the proper inquiry is whether AT & T honestly believed that Johnson had made the bomb threats."). Plaintiff does not dispute that she had previously been counseled to refrain from inappropriate

23

behavior in the workplace.   No matter what exactly was said, venting frustration such that made Mr. Silberstein so upset as to file a formal memorandum with the human resources department could constitute inappropriate conduct to merit dismissal.

Plaintiff's argument that Defendant's explanation for her discharge shifted makes a distinction that is immaterial here. As discussed above, Plaintiff was discharged for a pattern of conduct that culminated in an incident where she made upsetting comments to Mr. Silberstein.   Defendant characterized this conversation as a "threat" because that is how Mr. Silberstein characterized it in his memorandum.   Also characterizing the conversation and her pattern of behavior as "inappropriate conduct" is not an inconsistent explanation for her discharge. That is, that characterization does not rest on new or different facts; it simply applies a slightly different label to those facts.

Further, whether other employees did or did not feel personally threatened by Plaintiff's statements is a fact in dispute, but this does not preclude summary judgment.   As discussed above, Defendant offers that Plaintiff was not fired simply for the content of the alleged threat, but because the outburst was inappropriate and occurred after Plaintiff had been explicitly counseled to avoid inappropriate outbursts in the

workplace.    Plaintiff, therefore, has not established pretext, and summary judgment is appropriate on Counts III and IV.

   **C.    Count VII:  Review of MSPB Decision**

   Because   Plaintiff's   discrimination   claims   have   been dispensed with, the nondiscrimination components of Plaintiff's case before the MSPB must be considered.   Pursuant to 5 U.S.C. § 7702(b)(5)(A), Plaintiff appeals the decision of the MSPB to uphold her discharge, which was affirmed by the EEOC, arguing that the Board acted contrary to law by applying an incorrect standard to her case and improperly considered confidential statements made to her union representative.

   Where an individual has a "mixed" case complaint of discrimination and improper discharge that may be appealed to the MSPB, she may either pursue that appeal or file a complaint with the EEO.   29 C.F.R. § 1614.302(b).   If she appeals to the MSPB, and the MSPB makes ruling adverse to the individual, she may then petition the EEOC for review of that ruling.   5 U.S.C. § 7702(b).   If the EEOC concurs in the final decision of the MSPB, that decision becomes judicially reviewable in federal district court.   5 U.S.C. § 7702(b)(5)(A).

   The discrimination claims are reviewed *de novo*, and nondiscrimination claims are reviewed under an "arbitrary and capricious" standard.   5 U.S.C. § 7703(c).   Plaintiff's claim challenging her discharge is a nondiscrimination claim.   In such

a case, the administrative record is reviewed to determine whether the MSPB's conclusions are: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Id.* "Substantial evidence" in this context means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Frederick v. Dep't of Justice*, 73 F.3d 349, 352 (Fed. Cir. 1996) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Plaintiff bears the burden to prove arbitrariness or capriciousness, procedural impropriety, or lack of substantial evidence. *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

Plaintiff argues that the MSPB decision must be reversed for two reasons: (1) that it incorrectly considered confidential statements Plaintiff made to her union representative; and (2) that the MSPB analyzed the charge against Plaintiff under incorrect law.

Plaintiff first contends that her communications with her union representative are privileged, and the MSPB erred in allowing them to be considered. Because she is the party asserting privilege, Plaintiff bears the burden of establishing its applicability. *See Solis v. Food Empl'rs Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011) (noting that the party

claiming both attorney-client privilege and attorney work product privilege "bears the burden of demonstrating the applicability" of the protection) (citations omitted). Plaintiff has not met her burden, and the MSPB did not abuse its discretion in affirming the denial of Plaintiff's motion *in limine* to exclude Mr. Silberstein's memorandum summarizing the conversation. *See Ayres v. Dep't of Homeland Sec.*, 280 Fed.App'x 991, 995 (Fed. Cir. 2008) (explaining that evidentiary rulings "fall within the discretion of the Board and its officials, and will not be overturned absent a clear and harmful abuse of discretion"). In concluding that Plaintiff's conversation with Mr. Silberstein was not privileged, the Board carefully reviewed Federal Labor Relations Authority, MSPB law, and common law governing attorney-client privilege. Applying the fact of Mr. Silberstein's status as a union representative and that he voluntarily supplied Commerce with the information, the MSPB reasonably concluded that Plaintiff was not entitled to any protection in this case. Accordingly, this conclusion is neither arbitrary and capricious, nor an abuse of discretion.

Next, Plaintiff argues that although Commerce discharged her for making "inappropriate statements," the evidence shows that she was actually fired for making "threats," which requires the MSPB to apply a different legal standard than the one used when evaluating a charge of "inappropriate statements." To

support this argument, Plaintiff cites *Metz v. Department of the Treasury*, 780 F.2d 1001 (Fed. Cir. 1986), in which the Federal Circuit outlines five factors for a court to consider when deciding whether a threat was actually made to support an employee's dismissal.   Because Plaintiff was not charged with making threatening comments, the MSPB did not err in declining to analyze Plaintiff's case under the test set forth in *Metz*. *See Adair v. Solis*, 742 F.Supp.2d 40, 61-62 (D.D.C. 2010) (concluding that MSPB did not err in evaluating plaintiff's mixed case for discharge and mental illness discrimination under the "statements causing anxiety and disruption in the workplace" standard, rather than the *Metz* "threatening comments" standard, when he told supervisors that he "had been feeling violent" and "would rather see everyone dead and the whole world destroyed" than be disrespected) (citing *McCarty v. Dep't of the Navy*, 67 M.S.P.R. 177, 182-83 (1995) (concluding that administrative law judge did not err in declining to consider whether plaintiff made a threatening statement under *Metz* because "so long as the agency proves its charge of making statements that caused anxiety and disruption in the workplace, and further proves that discipline promotes the efficiency of the service and that penalty of removal is reasonable, its charge may be sustained")).   Accordingly, summary judgment in Defendant's favor is appropriate on Count VII.

**IV.   Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Defendant Rebecca M. Blank will be granted.   A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge